## Astro Manufacturing Company, Inc. v. Northwest Savings (No. 2)

*H. Ray Pope*, for plaintiff.
*Frederick A. Gallup*, for defendant, Northwest Savings.

*Andrew Conner*, for defendant, Federal Home Loan.

*William McFate*, for defendant, Northwest Pa. Bank & Trust.

*Gary L. Farren*, for defendant, Philip Womer.

WOLFE, *P. J.*, September 18, 1975—This matter is again before us after plaintiff was directed to re-file its complaint in the face of demurrers filed by each defendant, which amended complaint is now filed and is met with interpleading of additional defendants and pre-trial motions which we now resolve.

The liabilities of the parties, inter se, is founded in a triangular financial method of sales of mobile homes manufactured by plaintiff wherein plaintiff, as the manufacturer, upon request of additional defendant, Womer Mobile Homes (Womer), would deliver its homes to Womer under an agreement providing that the latter would act as a retail outlet. In order to pay plaintiff for the homes so delivered, plaintiff alleges defendant Northwest Savings Association (Northwest) orally agreed to pay plaintiff on delivery at such time as Northwest received the invoice from Womer and made a credit check on the retail customer, Womer holding the trailers under a trust floor-plan agreement with Northwest. Under this system, for some time prior to the current loss, at such time as Northwest approved a Womer retail sale, Northwest would deliver its draft to plaintiff for the manufacturer's sale.

At different times, three drafts, aggregating $25,880, were drawn under this arrangement by Northwest "to the order of Astro Mfg. Co., Inc."; underneath the payee's name on each draft was the recital: "For credit to the account of Philip O.

Womer Mobile Homes." These drafts were hand delivered by Northwest to an agent of Womer who, in turn, placed them for deposit with defendant Northwest Pennsylvania Bank and Trust Company by its deposit stamp but without the endorsement of plaintiff. The funds were consumed by Womer in its general business, precipitating this action.

The drafts were processed by the collecting bank, Northwest Pennsylvania Bank and Trust Company, and first delivered to the second collecting bank, Mellon Bank, N.A., and finally honored by defendant Federal Home Loan Bank of Pittsburgh as payer bank against the account of Northwest.

There is no dispute among the parties that, after the drafts were first accepted by Northwest Pennsylvania Bank and Trust Company, they were thereafter electronically processed without benefit of personal perusal for any irregularity and it is on this state of the record the parties have filed their motions.

## I. *Federal Home Loan Bank of Pittsburgh (Federal) Motion to Amend Answer and New Matter*

This motion is made to amend Federal's answer to plaintiff's amended complaint under its new matter to plead indemnity against defendant Northwest Pennsylvania Bank and Trust Company (Pennsylvania) in the event Federal is found liable to Northwest Savings Association (Northwest).

No objections were voiced to the motion at the time of argument and we are of the opinion no prejudice will ensue by permitting the amendment, and the amendment will perfect an orderly disposition of all parties' causes of action. We therefore grant the motion.

## II. Motion of Federal Home Loan Bank of Pittsburgh Requesting Dismissal of Joinder of Mellon Bank as Additional Defendant

Mellon Bank, N.A. was joined by Federal under Pa. R.C.P. 2252 as an additional defendant to which Mellon answered with the provisions of 12 USC §94, which, in effect, prohibits suit against a national association unless proper venue is had, which this court admittedly does not have. The Court has heretofore granted Mellon's motion for dismissal. A copy of the opinion is attached hereto and made a part hereof, and the within motion of Federal is granted without prejudice to Federal to initiate further proceedings against Mellon in the proper forum.

## III. Preliminary Objections of Northwest Savings Association to Amended Answer and New Matter of Defendant Federal Home Loan Bank of Pittsburgh to the Complaint of Joinder of Northwest Savings Association

Northwest complains that neither leave of court nor consent of Northwest was obtained prior to the filing of Federal's amended answer to the complaint of joinder of Northwest. Northwest, in the alternative, requests a more specific pleading, because the amended answer did not sufficiently specify the date, payee(s), amounts and drawee bank on other checks which were allegedly drawn and endorsed in a manner similar to the three checks involved in the present lawsuit and fails to specify the source or nature of the "condition precedent to the obligations" of Federal, e.g., Uniform Commercial Code, written contract, etc.

There is no prejudice to the amendment and in our opinion it should be permitted to resolve completely all of the issues and liabilities among the parties. The motion for more specific pleading is denied, as there is ample opportunity to obtain this information by deposition, interrogatories or discovery; further the suit is based in the Uniform Commercial Code for the most part, with fringed allegations of negligence.

### IV. *Defendant Northwest Savings Association Motion for Summary Judgment Against Plaintiff Astro Mfg. Company, Inc.*

Plaintiff's cause of action is grounded in three drafts drawn by Northwest "to the order of Astro Mfg. Company, Inc." Beneath the payee's name on each draft was the recitation: "For credit to the account of Philip O. Womer Mobile Homes." These drafts were processed through Pennsylvania and Mellon as collector banks and paid by Federal, drawee bank, all without the benefit of the endorsement of the payee, Astro Mfg. Company, Inc.

Pursuant to Pa. R.C.P. 1020, plaintiff pleads its cause of action against Northwest in assumpsit and trespass; the former alleging Northwest breached an oral agreement with plaintiff to pay the amount of invoices for mobile homes manufactured and sold by plaintiff to Philip O. Womer Mobile Homes (Womer) and, in the latter, that Northwest was negligent, inter alia, in the manner in which it designated the payee, in failing to deliver the drafts to plaintiff, in permitting its drawee bank (Federal) to charge Northwest's account without proper endorsement, in failing to secure reimbursement from Federal and in delivering the

drafts to a person alleged to be financially irresponsible.

Counsel for Northwest has filed an extensive brief asserting the drafts were nothing more than a promise to pay and thus no duty was imposed on the maker and created no rights in the payee unless the promise itself was enforceable as a matter of contract. In this respect, it is alleged and argued this is an absence of quid pro quo between plaintiff and Northwest and lack of delivery of the drafts to plaintiff. As to the trespass action, Northwest generally denies any negligence or that its conduct was the proximate cause of the loss to plaintiff.

Pa. R.C.P. 1035 prohibits the entry of summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, point to a genuine issue as to any material facts. The moving party must be entitled to judgment as a matter of law: McFadden v. American Oil Company, 215 Pa. Superior Ct. 44, 237 A. 2d 283 (1969); Toth v. Philadelphia, 213 Pa. Superior Ct. 282, 247 A. 2d 629 (1968). The burden is on the moving party and the record must be examined in the light most favorable to the non-moving party: Schacter v. Albert, 212 Pa. Superior Ct. 58, 239 A. 2d 841 (1968).

" "The Court must consider both the record actually presented and the record potentially possible at the time of trial. . . . A hearing on a motion for summary judgment is not a trial on the merits and the Court on such motion should not attempt to resolve conflicting contentions of fact. . . . ' 'It is often the case that although the basic facts are not in dispute, the parties in good faith may nevertheless disagree about the inferences to be drawn from these facts, what the intention of the parties was

as shown by the facts. . . . Under such circumstances the case is not one to be decided by the Trial Judge on a motion for summary judgment.' S. J. Groves & Sons Company v. Ohio Turnpike Commission, 315 F. 2d 235, 237, 238 (C. A. 6), cert. denied, 375 U. S. 824 (1963)." Schacter v. Albert, supra, at 61-62.

We have heretofore denied a demurrer of all three defendants to the original complaint and, in considering a summary judgment motion, which, in effect, is a broad demurrer prior to the issue being tried by the factfinders, we are permitted only to remove the case from the factfinders if reasonable men would not disagree on the respective positions of the parties. The history of this case to this point compels a denial of the motion, as certainly there are many questions raised as to the relationship of plaintiff with Northwest, including a history of commercial dealing wherein Northwest financed the mobile homes manufactured by plaintiff on a floor plan with Womer. Indeed, many issues are raised that point to a genuine issue between these two parties that only the factfinders can resolve.

The motion is denied.

V. *Motion for Judgment on the Pleadings by Northwest Savings Association Against Astro Mfg. Co., Inc.*

Northwest requests judgment on the pleadings under Pa. R.C.P. 1034, against plaintiff and asserts as the basis therefor basically the same arguments advanced in its motion for summary judgment. Again, this motion is in the nature of a demurrer after the pleadings are closed but distinguishable from summary judgment and, in our opinion, is a narrow demurrer confined to the pleadings: Bata v.

Central-Penn National Bank, 423 Pa. 373, 224 A. 2d 174 (1966). Reviewing the complaint, we are convinced plaintiff states a cause of action and the issues raised cannot be determined as a matter of law.

The motion is denied.

*VI. Defendant Northwest Savings Association's Motion for Summary Judgment Against Defendant Federal Home Loan Bank of Pittsburgh*

Northwest joined Federal as an additional defendant by complaint to which Federal has answered. On a request for admissions pursuant to Pa. R.C.P. 4014 by Northwest, Federal acknowledged its relation to the drawer, Northwest, as the drawee bank, that plaintiff was named as "a payee" on the drafts drawn by Northwest, that the drafts were honored by Federal and the account of Northwest was charged for them all without the endorsement of plaintiff.

Federal's opposition to the motion is Northwest's alleged negligence in the manner in which it designated the payee and in the manner in which it delivered the drafts to a party other than the payee and relies on the holding in Schacter v. Albert, supra, that where there are issues of negligence summary judgment is not appropriate.

This argument is met by Northwest's contention that any negligence by it or any inference of negligence because of its prior dealings in the triangular financing of homes manufactured by plaintiff, delivered to Womer and financed by Northwest was not the proximate or resulting cause of the loss. With this we agree.

We are not confronted here with a forged or altered payee signature but rather with a missing signature on the three drafts which were honored by Federal as the payer bank to the loss of its customer, Northwest. The Uniform Commercial Code of April 6, 1953, P. L. 3, as amended, 12A PS §4-401, sets the authorization of a payer bank as:

". . . against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft."

Here, with a complete lack of endorsement of the payee, the drafts submitted to Federal were not properly payable due to the absence of the payee's signature. The payer bank is in a contractual relationship with its customer and by the creation of the account agrees that it will not pay its customer's money out of the account except through the customer's designated payee: Provident Trust Company of Philadelphia v. Interboro Bank & Trust Company, 389 Pa. 548, 554-55, 133 A. 2d 515 (1957) where it was held that

" '[A] bank by accepting a deposit guarantees that it will not pay the depositor's money except (1) to the depositor or (2) to the payee named by the depositor in checks drawn on the bank or (3) to the person who by reason of a valid endorsement from the payee becomes entitled to such payment. This undertaking by the bank is contractual by nature, the relationship of depositor to bank being that of creditor and debtor, and the liability of the bank in the event of a breach of its guarantee is absolute; '. . . no amount of care to avoid error will protect it from liability if it pays to a wrong person. . . .' "

Federal's reliance on section 3-406 of the Uniform Commercial Code is not warranted in this case. This section provides relief to the drawee or payer bank who honors an instrument in good faith and in accordance with reasonable commercial standards if the drawer of the draft negligently and substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature. In the instant case there is a complete absence of a required signature to validate the drafts. The drafts were not negotiable in the state in which Federal accepted them and honored them. The notation below the payee's name "for credit to the account of Philip O. Womer Mobile Homes" is certainly not a negligent act in contemplation of section 3-406 of the Uniform Commercial Code. Federal's argument that Northwest was negligent by delivering the drafts to a person other than the payee cannot be accepted in the commercial world. It is common knowledge that many persons handle commercial paper before it reaches the hands of the payee, all of which is a vital and necessary part of a complicated business world. If each draft had to be delivered to the payee directly by the drawer the commercial world would come to a grinding halt. Essentially, however, and notwithstanding the drawer delivered the drafts to an agent of additional defendant Womer, this in no respect was a contributing or proximate cause of the loss. The loss was directly caused by Federal's acceptance of a non-negotiable instrument irrespective of who may have delivered it to the collecting bank, Pennsylvania. Further, even if negligence did exist, the commercial world could not tolerate a payer bank conflating the negligence of a third party with its

own to the loss of its depositor. If we were to hold this a valid defense and submit the issue to the factfinders we place the factfinders in direct conflict with section 4-401(1) of the Uniform Commercial Code. Indeed, payment by the drawee on a forged instrument is improper and renders the drawee bank liable: Provident Trust Company of Philadelphia, supra; Land Title Bank & Trust Company v. Cheltenham National Bank, 362 Pa. 30, 96 A. 2d 768 (1949). The only exception to this absolute liability is pronounced in Uniform Commercial Code, section 3-405 protecting the drawee bank against imposters and fictitious payees. However, in the instant case the drawee bank honored the drafts without any endorsement and as drawn to a designated payee.

Federal's argument that it honored the drafts in accordance with reasonable commercial standards as provided by section 3-406 of the Uniform Commercial Code is not applicable in the face of the lack of an endorsement, as obviously there has been no alteration of the instrument or the making of an unauthorized signature.

For these reasons, we hold there is no genuine issue as to any material fact nor any genuine issue as to the inferences to be drawn from these facts and we therefore enter summary judgment in favor of Northwest Association against Federal Home Loan Bank of Pittsburgh.

VII.   *Defendant Federal Home Loan Bank of Pittsburgh's Motion for Summary Judgment Against Defendant Northwest Pennsylvania Bank & Trust Company*

Federal, by its answer to plaintiff's amended complaint, joined Northwest Pennsylvania Bank

and Trust Company as an additional defendant and now seeks summary judgment against Pennsylvania pursuant to Pa. R.C.P. 1035. Federal seeks this judgment to protect it from any liability it may have to plaintiff or to Northwest.

Federal asserts the collecting bank, Pennsylvania, breached its duty and warranty to Federal under article 4, section 207 of the Uniform Commercial Code which applies to this case:

"(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that

"(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title."

Again, we think it is urgent to note the drafts were non-negotiable due to lack of endorsement of the payee when Pennsylvania accepted them. Pennsylvania's opposition to Federal's motion is based on the contention that Federal was negligent by honoring an instrument it knew or should have known was not negotiable. This argument is akin to Federal's argument against Northwest and we are of the opinion it warrants the same answer, namely, Pennsylvania cannot conjugate the negligence of Federal, if any, to salvage its breach of warranty.

The recital in the payee column as to whom credit was to be given was Northwest's identification to plaintiff and a cursory glance by a Pennsylvania teller would have and should have as a matter of law ceased the negotiation of these drafts: Continental Bank & Trust Company v. American Bank & Trust Company of Pennsylvania, 92 Montg. 282,

affirmed, 217 Pa. Superior Ct. 371 (1970); Provident Trust Company v. Interboro Bank & Trust Company, 389 Pa. 548 (1957).

Pennsylvania's argument that section 4-302 of the Uniform Commercial Code exonerates it is misplaced. This section merely provides that the payer bank is responsible if it neglects to return a non-honored item or does not give notice of dishonor before midnight of the banking day of the receipt of the item. In this regard it is Pennsylvania's argument that, if the drafts had been returned to it in sufficient time, it could have corrected the error by revoking the amount charged to Womer's account. We agree with Federal that this is a misapplication of this section in that it was designed to set a payer bank's responsibility to either pay or return an item within the time fixed. In the instant case Federal, in fact, made payment.

Again, to submit the factual situation as exists between Pennsylvania and Federal to the factfinders is to confront them with a contradiction of undisputed facts in relation to the warranty of Pennsylvania which we believe to be improper in this instance.

For the foregoing reasons, we grant the motion of Federal Home Loan Bank of Pittsburgh for summary judgment against Northwest Pennsylvania Bank and Trust Company and enter the following

## ORDER

1. The motion of Federal Home Loan Bank of Pittsburgh to amend its answer and new matter is granted.

2. The motion of Federal Home Loan Bank of Pittsburgh requesting dismissal of joinder of Mellon Bank as additional defendant is granted.

3. The preliminary objections of Northwest Savings Association to amended answer and new matter of defendant, Federal Home Loan Bank of Pittsburgh to the complaint of joinder of Northwest Savings Association is denied.

4. The motion of defendant, Northwest Savings Association for summary judgment against plaintiff, Astro Mfg. Co., Inc., is denied.

5. The motion of Northwest Savings Association for judgment on the pleadings against Astro Mfg. Co., Inc., is denied.

6. The motion of Northwest Savings Association, defendant, for summary judgment against Federal Home Loan Bank of Pittsburgh is granted.

7. The motion of defendant, Federal Home Loan Bank of Pittsburgh for summary judgment against defendant, Northwest Pennsylvania Bank and Trust Company is granted.

8. The case is set down for trial commencing November 17, 1975 at 9:00 a.m. for jury selection.